## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| HI-TECH PHARMACEUTICALS, INC., a Georgia corporation, 6015 Unity Drive, Norcross, Georgia 30071, <br><br> and <br><br> JARED WHEAT, 6015 Unity Drive, Norcross, Georgia 30071, <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES FOOD AND DRUG ADMINISTRATION, 10903 New Hampshire Avenue, Silver Spring, Maryland 20993, <br><br> and <br><br> SARA BRENNER, in her capacity as Acting Commissioner of the United States Food and Drug Administration, 10903 New Hampshire Avenue, Silver Spring, Maryland 20993, <br><br> and <br><br> UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, 200 Independence Avenue, S.W., Washington, D.C. 20201, <br><br> and | Civil Action No. _____ <br><br> **COMPLAINT** |

ROBERT F. KENNEDY, JR., in his capacity )
as Secretary of the United States Department )
of Health and Human Services, )
200 Independence Avenue, S.W., Washington, )
D.C. 20201, )
                                 )
Defendants. )
                                 )
_____ )

       Plaintiffs Hi-Tech Pharmaceuticals, Inc. ("Hi-Tech"), and Jared Wheat (collectively "Plaintiffs"), by and through their undersigned counsel, for their Complaint against Defendants the United States Food and Drug Administration ("FDA"), Sara Brenner, in her official capacity as Acting FDA Commissioner ("Brenner"), the United States Department of Health and Human Services ("HHS"), and Robert F. Kennedy, Jr., in his official capacity as Secretary of HHS ("Kennedy") (collectively, "Defendants"), hereby allege as follows:

## **INTRODUCTION**

       1.      This Action is one for declaratory and injunctive relief against the FDA and the other Defendants for their arbitrary and capricious action in attempting to regulate the dietary supplement ingredient DMHA (also known as 2-aminoisoheptane HCl, 1,5-DMHA, 2-amino-6-methylheptane, 2-amino-5-methylheptane, 1,5-Dimethylhexylamine, and 2-Isooctyl amine) without engaging in the rulemaking procedures required by law. DMHA is found in the walnut tree

(*Juglans regia*), one of the oldest tree foods known to man, and can also be synthetically produced, much like a vitamin or amino acid.

2.    Dietary supplements do not require pre-market approval. Pursuant to the Food, Drug, and Cosmetic Act ("FDCA"), as amended by the Dietary Supplement Health and Education Act ("DSHEA"), if the FDA wants to ban a particular supplement or supplement ingredient, the FDA bears the burden of establishing that the supplement or ingredient is unsafe. Rather than adhere to this statutory and regulatory scheme surrounding dietary supplements, the FDA has instead simply "declared" certain dietary supplement ingredients—like DMHA— "adulterated," without evidence and without engaging in the required administrative rulemaking or enforcement process.

3.    With respect to DMHA, which poses no danger to consumers, the FDA has attempted to declare DMHA an "unsafe food additive" and dietary supplements containing DMHA "adulterated," merely by issuing a warning letter to Hi-Tech (the "Warning Letter") and posting statements about DMHA on the FDA's website. But the FDCA does not permit the FDA to regulate simply via issuing a warning letter and posting statements on a website.

4.    For Mr. Wheat, the President and Chief Executive Officer of Hi-Tech, the FDA's attempted end-run around the FDCA poses a risk to his personal liberty. Mr. Wheat and Hi-Tech are subject to an unrelated criminal prosecution for

various fraud and other charges regarding dietary supplements, as set forth in a second superseding indictment that was returned on December 3, 2024. *See United States v. Jared Wheat, et al.,* No. 17-cr-00229 (N.D. Ga.) (the "Criminal Action"). Among Mr. Wheat's bond conditions is the requirement that he not manufacture, distribute, or sell "adulterated foods or misbranded drugs." Recently, the government filed a motion in the Criminal Action to modify Mr. Wheat's bond conditions, arguing that he has been violating his bond by continuing to sell "adulterated" products containing parts per million of illegal anabolic steroids. Mr. Wheat has vociferously denied these allegations. As Mr. Wheat has explained in his response, the government has presented no evidence that the products at issue and on sale today, which, at best, may contain trace amounts of steroids, are adulterated. On February 7, 2025, the court in the Criminal Action granted the government's motion in part, prohibiting Mr. Wheat and Hi-Tech from manufacturing and/or distributing five specific products, while denying the government's request for a recall of these products.

5.    This is the second case Plaintiffs have had to initiate due to the FDA's refusal to adhere to the regulatory process set forth in the FDCA. In 2019, after receiving the FDA's Warning Letter, Hi-Tech and Mr. Wheat initiated an action, similar to this one, styled *Hi-Tech Pharmaceuticals, Inc., et al. v. Norman E. Sharpless, M.D., et al.*, No. 19-cv-1268 (D.D.C) (the "First DMHA Case"). In

moving to dismiss that case, the government stated that the FDA's warning letters "do not expose anyone to increased civil or criminal penalties" and that the "Warning Letter alone cannot subject [Mr. Wheat] to incarceration." However, given the government's penchant for declaring, without evidence, that Hi-Tech's products are "adulterated"—as shown by the government's recent motion to modify the conditions of Mr. Wheat's bond—Mr. Wheat faces the very real threat that the United States Attorney's Office for the Northern District of Georgia (the "USAO") could move to revoke or otherwise modify his bond based on nothing more than the FDA's assertion, without proof, that Hi-Tech's DMHA-containing products are adulterated.

6.    This risk becomes even greater due to recent developments in a civil lawsuit against Hi-Tech, *Allison Ottesen v. Hi-Tech Pharmaceuticals, Inc.*, No. 19-cv-7271 (N.D. Cal.) (the "Class Action"), in which the claims of a putative nationwide class of consumers hinge entirely on the FDA's Warning Letter and webpage declaring DMHA "adulterated." The Plaintiffs in the Class Action allege that they would not have purchased Hi-Tech's DMHA-containing products had they known the products were "adulterated" and therefore, "illegal." In the First Amended Complaint ("FAC"), the Plaintiffs specifically mention Mr. Wheat's appearance bond in the Criminal Action and the requirement that he and Hi-Tech

are prohibited from manufacturing, distributing, or selling adulterated foods. Class-wide damages in excess of $5,000,000 are being alleged.

7.      The court in the Class Action recently denied Hi-Tech's motion to dismiss the FAC, citing in part the FDA's webpage about DMHA and holding that "the FDA has indicated that it has come to a conclusive determination after thorough consideration and research" that DMHA is an "unsafe food additive" and that DMHA-containing dietary supplements are "adulterated" under the FDCA. Of course, because the FDA has failed to engage in the administrative rulemaking process, Plaintiffs have no idea what this "thorough consideration and research" are or what evidence the FDA was relying on, and did not have an opportunity to be heard by the FDA. As a result of the FDA's attempt to regulate via warning letter and statements on a website, Hi-Tech continues to be subjected to a years-long class action lawsuit in which millions of dollars are potentially at stake.

8.      Moreover, while it would be completely improper, even more concerning is the risk that the USAO could somehow invoke the *Ottesen* court's decision as evidence that Mr. Wheat is violating his bond.

9.      Because the FDA has refused to engage in the rulemaking process set out in the FDCA, there has been no public discussion or comment as to the scientific evidence regarding DMHA and its safety. DMHA, derived from walnuts, has existed in the food supply for many years and certainly before October 15,

6

1994, the operative date of DSHEA, and is therefore not a "new dietary ingredient" requiring pre-market notification to the FDA. In response to the FDA's Warning Letter in 2019, Hi-Tech filed the First DMHA Action and separately provided the FDA with an expert report establishing the long-standing and safe usage of DMHA by humans. The FDA never responded to Hi-Tech's expert analysis, instead updating its website about DMHA years later to state that "[a]fter further research and consideration, FDA concluded that DMHA is an unsafe food additive" and "still considers dietary supplements containing DMHA to be adulterated." *See* https://www.fda.gov/food/information-select-dietary-supplement-ingredients-and-other-substances/dmha-dietary-supplements) (last visited Feb. 14, 2025). Again, the FDA has never disclosed anything about the substance or content of this "research and consideration."

10.    The FDA's continued efforts to ban Hi-Tech's products, and specifically its DMHA-containing products, without following the FDCA, are forcing Hi-Tech to defend a class action that is entirely premised on whether or not DMHA is an adulterated product and jeopardizing Mr. Wheat's personal liberty.

11.    Plaintiffs respectfully request that the FDA's continued attempts to circumvent the notice and rulemaking procedures in the FDCA be enjoined and that, if the FDA has scientific evidence that brings the safety of DMHA into question, it be required to disclose this evidence and engage in the formal notice

and comment rulemaking process to regulate the ingredient. Furthermore, Plaintiffs seek an express declaration that DMHA is a legitimate dietary ingredient, the presence of which in a dietary supplement product does not render that product an "adulterated food."

## JURISDICTION AND VENUE

12.    This case arises under the United States Constitution and the laws of the United States and presents a federal question within this Court's jurisdiction under Article III of the United States Constitution and 28 U.S.C. § 1331. The Court also has jurisdiction under the Administrative Procedure Act, 5 U.S.C. § 702. The Court has authority to grant declaratory relief pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.* Venue is proper in this district under 28 U.S.C. § 1391(e).

## PARTIES

13.    Plaintiff Hi-Tech is a Georgia corporation with its principal place of business in the State of Georgia. Hi-Tech is one of the largest manufacturers and distributors of dietary supplements in the United States. Hi-Tech sells its products to more than 100,000 retail locations, including GNC, CVS, Walgreens, Wal-Mart, K-Mart, Kroger, and convenience stores nationwide. Hi-Tech also sells directly to consumers, healthcare practitioners, and food and dietary supplement companies. Hi-Tech also contract manufactures dietary supplement products for other

companies and buys and sells raw ingredients for dietary supplement products as well. Several of Hi-Tech's products contain DMHA.

14.     Plaintiff Jared Wheat is the President and Chief Operating Officer of Hi-Tech.

15.     Defendant FDA is an agency within HHS and has direct responsibility for implementing the FDCA, as amended by DSHEA. FDA is responsible for enforcement of these laws.

16.     Defendant Brenner is the Acting Commissioner of the FDA. In her official capacity as the Acting Commissioner, Brenner is, in whole or in part, directly responsible for the decisions that are at issue in this lawsuit. Brenner is sued in her official capacity only.

17.     Defendant HHS is an agency of the United States Government. HHS is responsible for ensuring that agencies within the control of HHS, including the FDA, remain in compliance with federal law.

18.     Defendant Kennedy is the Secretary of HHS. In his official capacity as the Secretary of HHS, Kennedy is responsible for ensuring that agencies within the control of HHS, including the FDA, are in compliance with federal law and is, in whole or in part, directly responsible for the decisions at issue in this lawsuit. Kennedy is sued in his official capacity only.

## THE LEGAL FRAMEWORK FOR THE REGULATION
## OF DIETARY SUPPLEMENTS

19.    Dietary supplements, including those manufactured, produced, marketed, distributed, and sold by Hi-Tech, are regulated pursuant to DSHEA, which amended the FDCA.

20.    Under DSHEA, a dietary supplement is deemed "adulterated" if it presents a "significant or unreasonable risk of illness or injury under the conditions of use recommended or suggested in labeling, or if no conditions of use are suggested or recommended in the labeling, under ordinary conditions of use." 21 U.S.C. § 342(f)(1)(A).

21.    Furthermore, under DSHEA, dietary supplements are regulated as a subset of foods, rather than drugs, unless the supplement's producer asserts disease claims that bring the supplement within the definition of a drug under the FDCA. *See* 21 U.S.C. §§ 321(ff) (defining "dietary supplement"), (g)(1) (defining "drug"); *see also* 21 U.S.C. § 343(r)(6) (identifying claims which may be made by dietary supplement manufacturers and those claims which are prohibited).

22.    Because dietary supplements are classified as foods, manufacturers and producers are not required to provide evidence of product safety or efficacy before marketing dietary supplement products. Dietary supplements are legally presumed to be safe. In any proceeding under DSHEA, the "United States shall bear the burden of proof on each element to show that a dietary supplement is

adulterated." 21 U.S.C. § 342(f)(1). Defendants thus have the burden of proof in

showing adulteration. Before commencing an enforcement action, the FDA must

provide the responding party "appropriate notice and opportunity to present views"

regarding the matter, at least 10 days before taking any action. 21 U.S.C. §

342(f)(2).

23.     DSHEA covers "dietary ingredients." A dietary ingredient is defined

as a "vitamin, mineral, amino acid, herb or other botanical, or dietary substance for

use by man to supplement the diet by increasing the total dietary intake, or a

concentrate, metabolite, constituent, extract or combination of any dietary

ingredient [from the preceding categories]." 21 U.S.C. § 321(ff)(1). Dietary

ingredients include both naturally occurring and synthetically produced versions of

the same ingredient. The FDA has recognized the equivalence of natural and

synthetically produced dietary ingredients in the context of several vitamins and

other ingredients.

24.     The above statutory framework applies generally to dietary

ingredients marketed in the United States prior to October 15, 1994. Dietary

ingredients introduced into the marketplace after that date, *i.e.* "new dietary

ingredients," require notification to the FDA at least 75 days prior to the marketing

of the ingredient with information regarding the ingredient's safety. 21 U.S.C. §

350b(a)(2).

25.     The effect of the above requirements is that, typically, the FDA only regulates and/or prevents the sale of "adulterated" dietary supplements on a "product-by-product basis" rather than on a "class basis." To date, there has been only a single occasion in which the FDA has taken action against an entire class of dietary supplements through the above referenced rulemaking procedures. *See Final Rule Declaring Dietary Supplements Containing Ephedrine Alkaloids Adulterated Because They Present an Unreasonable Risk*. 69 Fed. Reg. 6788 (February 11, 2004), codified at 21 C.F.R. § 119.1. In that Final Rule, FDA explained that its authority stemmed from 21 U.S.C. § 371(a), which is the formal delegation of rulemaking from Congress to the Secretary of Health and Human Services. 69 Fed. Reg. at 6794. The FDA has not followed this rulemaking procedure regarding dietary supplements that contain DMHA.

## DMHA

26.     As mentioned above, DMHA is a natural constituent of walnut trees (*Juglans regia)*. Walnuts and the bark of the tree itself have been consumed by humans for many centuries. *Juglans regia* is found in many parts of Asia, Europe, Australia, New Zealand, and the United States.

27.     There is a significant body of scientific evidence supporting the safety of DMHA for human consumption, and DMHA has an extensive history of use in dietary supplements. When Plaintiffs received the FDA's Warning Letter in 2019,

Plaintiffs retained a leading dietary supplement scientist/regulatory expert to look at the issue of DMHA's classification as a dietary ingredient and its safety.

28.    That expert concluded—after reviewing the relevant scientific literature on DMHA—that DMHA should be considered a dietary ingredient under DSHEA because it is found in multiple plants, each of which have a long history as part of the human diet.

29.    In order to analyze the safety of DMHA, the expert reviewed, among other things, data from the FDA's adverse event database for 2014 to 2018 using the various synonyms for DMHA. No record of a single serious adverse event was found. Coupled with Hi-Tech's lack of any serious adverse event reports, this evidence supported the expert's conclusion that there is no reason to question the safety of DMHA.

30.    As of the filing of this Complaint, searches of the FDA's adverse event database continue to return no reports of serious adverse events for DMHA and its various synonyms.

## THE FIRST DMHA CASE

31.    The FDA never responded to Hi-Tech's expert analysis of DMHA. Instead, the FDA moved to dismiss the First DMHA Case, arguing that the FDA's Warning Letter to Hi-Tech was not "final agency action" appealable in this Court, "not based on a complete administrative record," did not determine any "rights or

obligations…from which legal consequences flow," and "carries no legal consequences for anyone." *See Hi-Tech Pharms., Inc. v. Sharpless*, No. 19-cv-1268, FDA Br. at 12-13 (July 29, 2019) (ECF No. 5). Citing the D.C. Circuit's decision in *Holistic Candlers and Co Ass'n v. FDA*, 664 F.3d 940, 945 (D.C. Cir. 2012), the FDA also argued that "the FDA web page statements here are 'insufficient to transform advisory letters into final agency action.'" *Id.* at 14.

32.    This Court agreed with the FDA and dismissed Hi-Tech's Complaint on the basis that the FDA's Warning Letter was not "final agency action subject to judicial review." *See Hi-Tech Pharms., Inc. v. Hahn*, No. 19-cv-1268, 2020 WL 3498588, at *5-6 (D.D.C. June 29, 2020).

## THE FDA'S DMHA WEBSITE UPDATE AND THE CLASS ACTION

33.    Several years later, in March 2023, the FDA updated its webpage about DMHA. The webpage links to the warning letters it sent to companies (including Hi-Tech) concerning DMHA, and stated the following:

> The pre-2020 actions listed below reflect the Agency's position as of April 2019 when the FDA had concluded that DMHA was either an adulterated "new dietary ingredient" or an unsafe food additive. ***After further research and consideration, FDA concluded that DMHA is an unsafe food additive, as explained above.  The Agency still considers dietary supplements containing DMHA to be adulterated.***

14

*See* https://www.fda.gov/food/information-select-dietary-supplement-ingredients-and-other-substances/dmha-dietary-supplements) (last visited Feb. 14, 2025) (the "Website Update") (emphasis added). The FDA has never disclosed the "further research and consideration" mentioned in its Website Update, and Hi-Tech was never provided notice or an opportunity to be heard following Hi-Tech's response to the FDA's Warning Letter in connection with this new "research and consideration."

34.    Regardless, as a result of FDA's Website Update, plaintiffs in the Class Action moved to lift a stay that had previously been entered on primary jurisdiction grounds. *See* Motion to Lift the Stay, *Ottesen v. Hi-Tech*, No. 19-cv-7271 (N.D. Cal.) (Aug. 15, 2023) (ECF No. 66).

35.    Over Hi-Tech's objection, the court in the Class Action granted the Plaintiffs' motion. While noting that the FDA had not published a notice in the Federal Register seeking to declare DMHA "adulterated" and setting forth the basis for its position that "a substantial and unreasonable risk of illness or injury is presented" by the use of DMHA, the court held that "[n]othing about this language [in the FDA's Website Update] appears tentative, nor—unlike the last time this question came before the Court—is there any indication in the record that the FDA's 'decision-making is still ongoing.'" *Ottesen v. Hi-Tech Pharms., Inc.*, No. 19-cv-7271, 2023 WL 7351802, at *1-2 (N.D. Cal. Oct. 17, 2023).

15

36.    Hi-Tech requested permission to appeal the court's Order lifting the stay to the Ninth Circuit, and the court agreed, certifying the question of "whether statements posted to the FDA's website may constitute 'final agency action' sufficient to justify lifting a [primary jurisdiction] stay" for immediate, interlocutory appellate review. *See Ottesen v. Hi-Tech Pharms., Inc.*, No. 19-cv-7271, 2024 WL 589089 (N.D. Cal. Feb. 13, 2024). In a one-sentence Order, the Ninth Circuit denied Hi-Tech's petition for permission to appeal. *See Ottesen v. Hi-Tech Pharms., Inc.*, No. 24-1047 (9th Cir. Apr. 25, 2024).

37.    Subsequently, Hi-Tech moved to dismiss the Plaintiffs' First Amended Complaint in the Class Action. The court denied Hi-Tech's motion, relying in part on the FDA's Website Update. Specifically, the court explained that "the FDA has already concluded that DMHA is an 'unsafe food additive' and that 'dietary supplements containing DMHA are adulterated under the FD&C Act' because 'DMHA does not qualify as a dietary ingredient, is not an approved food additive, is not GRAS, and does not meet any of the other listed exceptions to the food additive definition ....'" *Ottesen v. Hi-Tech Pharms., Inc.*, No. 19-cv-7271, 2024 WL 5205539, at *7 (N.D. Cal. Dec. 23, 2024). The court continued: "[T]he FDA has indicated that it has come to a conclusive determination after thorough consideration and research. And allowing Plaintiffs' claims to proceed would be

consistent with the FDA's determination and not contradict the FDA's policies."
*Id.*

38.    Hi-Tech has moved for leave to file a motion for reconsideration, or in the alternative, to certify the court's Order denying its motion to dismiss for immediate interlocutory appeal. That motion was pending at the time of the filing of this Complaint.

39.    As a result of the FDA's attempt to ban DMHA with the Website Update instead of engaging in the required administrative rulemaking or enforcement procedures (which, in either case, would afford Hi-Tech due process protections and prior notice and an opportunity to be heard regarding the safety of DMHA), Hi-Tech continues to be subjected to a years-long class action lawsuit in which a putative nationwide class of consumers is seeking millions of dollars from Hi-Tech based on the false premise that DMHA is "illegal," per the FDA's Warning Letter and Website Update.

## THE GOVERNMENT'S BOND MOTION

40.    On January 2, 2025, the USAO filed a motion in the Criminal Action to modify the conditions of Mr. Wheat's bond, arguing that he has been violating his bond by continuing to sell "adulterated" products containing illegal anabolic steroids. *See U.S. v. Wheat, et al.,* No. 17-cr-00229 (N.D. Ga.) (ECF No. 532). As Mr. Wheat has explained in response, the government has presented no evidence

17

that the products at issue and on sale today are adulterated. *See U.S. v. Wheat, et al.,* No. 17-cr-00229 (N.D. Ga.) (ECF No. 533) (Jan. 16, 2025).

41.    Plaintiffs acknowledge that the government's bond motion in the Criminal Action was not about DMHA. However, there is a serious concern that, in circular fashion, the USAO could somehow invoke the *Ottesen* court's decision, which relies on the FDA's Website Update as a "conclusive determination" that DMHA is "adulterated," as further "evidence" that Mr. Wheat is violating his bond. This is particularly concerning given the government's obvious years-long campaign, through multiple departments and agencies, to declare Hi-Tech's products "adulterated" under the FDCA, without presenting evidence or going through the proper notice and rulemaking procedures set out in the FDCA to establish adulteration under the statute.

## COUNT I
### Judicial Review of Agency Action

42.    Plaintiffs repeat, reallege, and incorporate the allegations in all preceding paragraphs of the Complaint as if set forth at length herein.

43.    The FDA's Website Update declares that "[b]ecause DMHA does not qualify as a dietary ingredient, is not an approved food additive, is not GRAS, and does not meet any of the other listed exceptions to the food additive definition, it is an unsafe food additive, and dietary supplements containing DMHA are adulterated under the FD&C Act."

18

44.     The FDA did not go through the required notice and comment rulemaking process before declaring DMHA-containing dietary supplements— including those manufactured by Hi-Tech—"adulterated" under the FDCA.

45.     The FDA did not publish a notice in the Federal Register setting forth the basis and evidence for its position that "a substantial and unreasonable risk of illness or injury is presented" by the use of DMHA.

46.     The FDA did not provide Hi-Tech or any other interested party with prior notice or an opportunity to be heard before declaring DMHA-containing dietary supplements "adulterated" under the FDCA via its Website Update.

47.     The FDA did not commence an enforcement action regarding Hi-Tech's DMHA-containing products. Accordingly, the FDA never provided Hi-Tech with "appropriate notice and opportunity to present views" regarding the status of DMHA before declaring it "adulterated," in violation of 21 U.S.C. § 342(f)(2).

48.     The FDA's attempt to regulate and ban DMHA by way of the Website Update violates the FDCA.

49.     The FDA's actions are contrary to the FDCA and are arbitrary, capricious, and an abuse of discretion. 5 U.S.C. § 706(2)(A).

50.    The FDA's actions in circumventing the FDCA are contrary to Plaintiffs' rights of due process and deprive Plaintiffs of those rights, namely notice and an opportunity to be heard. 5 U.S.C. § 706(2)(B).

51.    The FDA's attempt to ban DMHA via its Website Update exceeds the FDA's statutory authority and does not observe the procedures for regulating or banning a dietary supplement ingredient as set forth in the FDCA. 5 U.S.C. § 706(2)(C) and (D).

52.    The FDA did not provide notice of proposed rulemaking in the Federal Register, did not provide for an opportunity for public comment, and did not publish any final rule in the Federal Register declaring its "determination" that DMHA-containing dietary supplements are "adulterated." Its purported determination is unsupported by any evidence that has been made available to Hi-Tech or the public, let alone substantial evidence. 5 U.S.C. § 706(2)(E).

## COUNT II
## Declaratory Judgment

53.    Plaintiffs repeat, reallege, and incorporate the allegations in all preceding paragraphs of the Complaint as if set forth at length herein.

54.    As set forth above, there exists an actual controversy of a justiciable nature between the Plaintiffs and the Defendants.

55.    For the reasons set forth previously, Plaintiffs are entitled to a judgment declaring the following:

20

a.      The FDA's actions in attempting to ban DMHA via the Website Update are unlawful;

b.      The FDA's Website Update has no legal effect, does not determine the rights and obligations of anyone, including, but not limited to, Hi-Tech or Mr. Wheat, and no legal consequences to Hi-Tech or Mr. Wheat flow from the Website Update;

c.      The FDA's Website Update violates the FDCA, as amended by DSHEA, is arbitrary and capricious, exceeds the FDA's statutory authority, and is an abuse of the agency's discretion;

d.      The FDA has violated Plaintiffs' due process rights by attempting to ban DMHA—including Hi-Tech's DMHA-containing products—without observing the procedures set forth in the FDCA, which are necessary to regulate or ban a dietary supplement ingredient;

e.      Unless and until the FDA engages in the procedures set forth in the FDCA to regulate DMHA, Defendants are prohibited from claiming in any court that DMHA-containing products are adulterated or misbranded; and

f.      DMHA is a legitimate dietary ingredient, the presence of which in a dietary supplement product does not render that product an "adulterated food."

**WHEREFORE**, Plaintiffs respectfully request that the Court grant the following relief:

a.      Entry of a final, declaratory judgment as set forth in Count II above;

b.      Entry of a preliminary and permanent injunction ordering the FDA to cease its continued attempts to circumvent the FDCA, and further ordering that if the FDA seeks to regulate DMHA in the future, the FDA must engage in the formal administrative

21

rulemaking process and present any evidence it has concerning the safety of DMHA; and

c.      Entry of an Order awarding Plaintiffs their attorneys' fees and costs, and such other and further relief as the Court may deem just and proper.

Respectfully submitted,

*/s/ Jack Wenik*
Jack Wenik (D.C. Bar No. 406362)
Epstein, Becker & Green, P.C.
One Gateway Center, 13th Floor
Newark, New Jersey 07102
(973) 642-1900
jwenik@ebglaw.com

*Counsel for Plaintiffs*
*Hi-Tech Pharmaceuticals, Inc.*
*and Jared Wheat*

Dated: February 18, 2025

*Of Counsel*

Arthur W. Leach
Georgia Bar No. 442025
5780 Windward Pkwy, Suite 225
Alpharetta, Georgia 30005
(404) 786-6443
art@arthurwleach.com